UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗

**DARIUS ASHLEY,**

       **Plaintiff,**

    -V-               **9:07-CV-166**
                      **(NAM/RFT)**

**JAMES CAMPBELL, Albany County Sheriff; JOHN
DOE #1, Deputy Sheriff of Transportation; JOHN DOE
#2, Deputy Sheriff of Transportation,**

       **Defendants.**

∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗

APPEARANCES:           OF COUNSEL:

Darius Ashley
05-A-6178
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
*Plaintiff Pro Se*

Corrigan, McCoy & Bush, PLLC     Robert P. Roche, Esq.
220 Columbia Turnpike
Rensselaer, New York 12144
*Attorneys for Defendants*

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

  Plaintiff, an inmate in the custody of the New York State Department of Correctional Services, brought this action, *pro se* and *in forma pauperis*, for monetary relief under 42 U.S.C.§ 1983, alleging that defendants used excessive force against him on various occasions. Presently before the Court is defendants' motion for summary judgment pursuant to Rule 56 and for dismissal of plaintiff's claim pursuant to Rule 12(b)(6).

### BACKGROUND

Familiarity with this matter is presumed based upon this Court's prior Memorandum-Decision and Order (Dkt. No. 26) and United States Magistrate Judge Randolph F. Treece's Report and Recommendation (Dkt. No. 24). According to the allegations in the complaint, while plaintiff was transported to court in October 2005, defendant John Doe #1 "slapped plaintiff several times across the face".[1] *See* Complaint, ¶ 1. Plaintiff further claims that during each trip to court in October 2005, leg and hand restraints were placed, "extra tight to the point where, on two separate occasions, plaintiff loss [sic] feeling in his legs and arms". *See* Complaint, ¶ 2. Plaintiff also alleges that while riding in an elevator in the courthouse, "John Doe #1 punched plaintiff in the stomach and slammed plaintiff faced [sic] up against the elevator door". *See* Complaint, ¶4. Plaintiff asserts that defendant John Doe #2 was present during the alleged assault(s) and failed to "put an end to the abuse". Plaintiff claims that he, "expressed the brutality to his court appointed counsel, George Mehms" and sent two letters to, "Sheriff Campbell reporting the abuse". *See* Complaint, ¶ 3, 5-6.

Plaintiff filed his complaint on February 15, 2007 and issue was joined with service of an answer on August 7, 2008. On August 28, 2008, defendants moved for summary judgment. (Dkt. No. 18). Plaintiff did not oppose the motion. The motion was referred to Magistrate Judge Treece pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c). Magistrate Judge Treece issued a Report and Recommendation recommending dismissal due to plaintiff's failure to prosecute and failure to keep the Court apprized of his current address. (Dkt. No. 24). Plaintiff objected to the Report and Recommendation (Dkt. No. 25). This Court reviewed the Report and Recommendation and set forth the chronology of events in the prior Memorandum-Decision and

---

[1] Although plaintiff does not specifically state where he was confined, defendants assert, in their Rule 7.1b Statement, that at the relevant time, plaintiff was an inmate at Albany County Correctional Facility ("ACCF").

Order as follows:

> On February 15, 2007, plaintiff filed the complaint (Dkt. No. 1). On April 3, 2007, plaintiff sent a letter to the court requesting an extension of time to ascertain the names of the John Doe defendants. On April 9, 2007, Magistrate Judge Treece responded as follows: "No extension necessary as no deadline has yet been established for filing of nondispositive motions." (Dkt. No. 9.) A docket entry shows that on July 1, 2007 the clerk's office changed plaintiff's address from Upstate Correctional Facility to Clinton Correctional Facility.
>
> On September 6, 2007, Magistrate Judge Treece received a letter from plaintiff requesting an extension of time to accumulate the $12.75 required to pay for copies of the paperwork needed to ascertain the names of the John Doe defendants. On the same date, Magistrate Judge Treece responded by ordering: "Plaintiff will be able to amend his complaint to identify Doe defendants until the nondispositive motion filing deadline expires. That deadline will not be established until after the defendants file an answer." (Dkt. No. 12.) On September 25, 2007, James L. Campbell, the only named defendant, signed an acknowledgment of receipt of the summons and complaint. It was not until August 7, 2008, however, more than 10 months later, that defendants filed an answer and served it on plaintiff at Southport Correctional Facility (Dkt. Nos. 16, 17). Three weeks later, August 28, 2008, defendants moved for summary judgment (Dkt. No. 18).
>
> When defendants filed their motion for summary judgment on August 28, 2008, they mailed a copy to plaintiff at Clinton County Correctional Facility, the address for plaintiff that was then on file (Dkt. No. 18). On August 29, 2008, at the direction of Magistrate Judge Treece, defendants' counsel sent plaintiff a notice of the consequences of failure to respond to the summary judgment motion (Dkt. No. 19); apparently this was sent to Upstate Correctional Facility.
>
> Defendants' counsel accomplished service of the summary judgment motion papers on plaintiff at the Schenectady County Correctional Facility on September 22, 2008 (Dkt. No. 21). As defendants' counsel explained to the Court (Dkt. No. 20), he had learned that plaintiff had been moved from Clinton County Correctional Facility to Southport Correctional Facility on July 26, 2008, and then to Auburn Correctional Facility on September 4, 2008. Plaintiff was picked up on September 9, 2008 by Schenectady County Sheriff deputies under an order to produce so that plaintiff could testify as a material witness at a felony trial in Schenectady County Court.

3

> Given the delay in service, Magistrate Judge Treece extended plaintiff's time to respond to the summary judgment motion until October 27, 2008 (Dkt. No. 22). As of March 5, 2009, the date of the Report and Recommendation, plaintiff had not responded to the summary judgment motion or provided an updated address. Nor did he seek assistance from the court or an extension of time. As of the date of the Report and Recommendation, the Court's docket sheet reflected plaintiff's last known address as Clinton County Correctional Facility, yet, according to the DOCS Inmate Locator website, plaintiff was in Upstate Correctional Facility. Magistrate Judge Treece found that plaintiff's failure to prosecute and provide a change of address warranted dismissal.

On March 10, 2009, plaintiff filed objections to Magistrate Treece's Report and Recommendation. At that time, plaintiff listed his address as Upstate Correctional Facility, Malone, New York. (Dkt. No. 25). On March 27, 2009, this Court issued an Order holding that plaintiff did not intend to abandon the lawsuit and should be given an opportunity for discovery. The Court provided plaintiff with instructions on how to obtain relevant discovery and denied defendants' motion for summary judgment without prejudice. (Dkt. No. 26). Specifically, the Court stated:

> plaintiff may mail to defendants' counsel a request that they answer interrogatories (a list of questions written by plaintiff asking for specific factual information), or a request that they produce specific documents. If plaintiff is dissatisfied with defendants' responses, he should make a motion to compel discovery, sent to Magistrate Judge Treece, explaining the problem and requesting the court's assistance.

The Court also ordered plaintiff to advise the Clerk's Office and defendants' counsel of every change in his address and cautioned, "[f]ailure to give prompt notice of every change in address will result in the dismissal of this action".

On April 14, 2009, Magistrate Judge Treece issued a Mandatory Pretrial Discovery and Scheduling Order. (Dkt. No. 28). Pursuant to the Order, all discovery was to be completed on or before July 14, 2009 with dispositive motions filed on or before October 13, 2009.

On August 6, 2009, defendants filed the within motion for summary judgment.[2] (Dkt. No. 29). Defendants seek dismissal of plaintiff's complaint arguing that plaintiff failed to exhaust his administrative remedies and further, that there is no evidence to support plaintiff's claim of excessive force or failure to intervene. Plaintiff has not opposed the motion.

## DISCUSSION

**I.    Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e).

**II.    Plaintiff's Failure to Oppose Defendants' Motion**

When the non-moving party "chooses the perilous path of failing to submit a response to a

---

[2] On August 6, 2009, defendants served plaintiff with a "Notice to *Pro Se* Litigant Opposing Motion to Dismiss". (Dkt. No. 29). Defendants served plaintiff at Upstate Correctional Facility in Malone, New York.

summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F. 3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). If the movant does not meet its burden of production, then a court must deny summary judgment even if the non-movant does not oppose the motion. *See id.* Moreover, the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement. *See id.* The court must be satisfied that the movant's assertions are supported by the evidence in the record. *See id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). When a nonmoving *pro se* party has failed to submit papers in opposition to a motion for summary judgment, summary judgment may be granted as long as the court is satisfied that the undisputed facts "show that the moving party is entitled to a judgment as a matter of law," and plaintiff has received notice that failure to submit evidence in opposition may result in dismissal of his or her case. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). If the plaintiff does not respond to any question of material fact, the facts set forth in defendants' Rule 7.1 Statement of Facts may be accepted as true. *Smith v. Hash*, 2006 WL 2806464, at *1 (N.D.N.Y. 2006) (citations omitted).

In this case, plaintiff was afforded ample notice of the fact that matters outside the pleadings filed herein would be considered with defendants' motion for judgment on the pleadings, as well as of the consequences he might suffer if he failed to file any papers in opposition to defendants' motion. Specifically, in their notice of motion, defendants provided the following cautionary language to plaintiff relative to his duty to respond to defendants' application:

### Notice to Pro Se Litigant Opposing Motion to Dismiss

> A motion to dismiss seeks dismissal of some or all of the claims you have asserted in your Complaint. You are hereby advised that if a motion is filed by the defendant(s) in this action, any factual assertions in affidavits will be taken as true by the District Court unless you contradict these assertions in affidavit form. You may not simply rely on your Complaint to oppose this motion. You must file a written response in opposition to this motion with the Court, and send a copy of same to opposing counsel.
>
> Pursuant to Local Rule 7. l of the Northern District of New York you are required to submit the following papers in opposition to this motion: (I) a **memorandum of law** (containing relevant factual and legal argument); and (ii) **affidavits** in proper form or other documents constituting facts admissible in form which prove or support your position in opposition to the motion.
>
> If you do not respond in opposition to the motion, judgment, if appropriate, will be entered against you. If partial judgment is granted against you, the portions of your case as to which judgment was granted will dismissed; there will be no trial as to these portions of your complaint. If judgment is granted as to your entire complaint, your case will be dismissed and there will not be any trial concerning any of the claims asserted in your complaint.

*See* Dkt. No. 29 at p. 3 (typeface in original).

Although plaintiff is *pro se*, his bald assertions, unsupported by evidence, are insufficient to overcome defendants' motion for summary judgment. *See Higgins v. Davis*, 2001 WL 262930, at *2 (S.D.N.Y. 2001). Since plaintiff was afforded ample notice by defendants that this Court would consider the declarations submitted along with their motion and specifically advised plaintiff of the consequences of his failure to timely file any papers in opposition to that application, this Court may properly consider the substance of defendants' motion – including the exhibits submitted therewith – to determine whether this action is subject to dismissal.

**III.    Failure to Exhaust**

Defendants argue that plaintiff failed to utilize the existing grievance procedures and

failed to exhaust administrative remedies. Defendants contend that plaintiff's claim that he told an Assistant Public Defender about the alleged abuse does not constitute a "special circumstance".

Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust all available administrative remedies prior to bringing a § 1983 action "with respect to prison conditions." *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 523-24 (2002) (discussing § 1997e(a) exhaustion requirements). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 200 (2007) (citation omitted). In light of this exhaustion requirement, a federal court must dismiss a § 1983 complaint brought by an inmate where the prisoner failed to exhaust his administrative remedies absent "justification for not pursuing [such] remedies." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citations omitted).

The Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *McQueen v. County of Albany*, 2010 WL 338081, at *7 (N.D.N.Y. 2010) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id*. Third, if

8

the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*.

This Court now considers these three factors in conjunction with the facts present in the case.

### A.    Availability of Administrative Remedies

Considering first whether administrative remedies were available to plaintiff at ACCF, the Court notes that New York has developed an inmate grievance program which prisoners are to utilize to resolve grievances they might have with respect to their treatment within the DOCS. *See* N.Y. Comp. Codes R. & Regs. Title 7, § 701.1.[3] Under that program, inmates must file a grievance within fourteen days of the incident giving rise to the grievance, but can request an exception to the time limit for "mitigating circumstances." *Id.*, § 701.7(a)(1).

When a plaintiff asserts generally that remedies were not available because he was told he could not grieve a certain issue, administrative remedies may be deemed unavailable. *Hill v. Tisch*, 2009 WL 3698380, at *6 (E.D.N.Y. 2009) (holding that administrative remedies may be deemed unavailable if the plaintiff was erroneously instructed by a prison official that he could not file a grievance and relied upon that misrepresentation). When testing the availability of administrative remedies in claims that undue influence from prison workers caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them

---

[3] A grievance is "a complaint about the substance or application of any written or unwritten departmental policy, regulation, procedure or rule." *See* 7 N.Y.C.R.R. § 701.2(a).

available". *McQueen*, 2010 WL 338081, at *7 (citing *Hemphill*, 380 F.3d at 688). When a plaintiff fails to identify or describe the person who allegedly gave him misleading advice, nor state when the exchange occurred, plaintiff's conclusory statements are insufficient to withstand summary judgment. *Hill*, 2009 WL 3698380, at *6.

In the complaint, plaintiff indicates that there was no prisoner grievance procedure at the facility. *See* Complaint at ¶ 4(a). However, plaintiff also declares in the pleading that he chose not to present the facts relating to his complaint in the prison grievance program because, "the Albany County guards . . . told [him] that since it didn't happen in County it's not thier [sic] problem." *See* Complaint at ¶ 4(b). Notwithstanding plaintiff's contradictory statements relative to this issue, the submissions before the Court conclusively establish that inmates at ACCF had an inmate grievance procedures available to them and further, that plaintiff never filed any grievances relating to the conduct that forms the basis of this civil rights action.

The record reveals that inmates at ACCF have a grievance program for both formal and informal grievances. In support of the motion, Thomas J. Wigger, the Superintendent of the ACCF, provided an affidavit stating that the process is explained in detail in the Inmate Handbook, which was annexed as an exhibit to Mr. Wigger's affidavit. *See McQueen*, 2010 WL 338081, at *8 (holding that the first prong of the *Hemphill* test was satisfied as defendants produced a copy of the Albany County Sheriff's Department's Inmate Grievance Procedure, which was applicable to inmate grievances at ACCF).

Moreover, in the affidavit provided by Christian Clark, the Inmate Grievance Program Supervisor employed by Albany County Correctional Facility, Clark declares that he reviewed the grievance logs and records and that such review revealed that plaintiff never filed any formal or

informal grievances from July to December 2005. Thus, the record establishes that plaintiff never filed any grievances relating to the allegations contained in his complaint, notwithstanding the fact that administrative remedies were available to plaintiff to contest his alleged abuse.

With regard to his claim that he was told by, "one of the Albany County Guards" that he could not grieve the issue because it didn't happen in the county, the Court finds that this conclusory statement is insufficient to withstand summary judgment. Plaintiff failed to identify the guard and failed to state when the exchange took place. Plaintiff also alleges that he sent two letters to Sheriff Campbell reporting the abuse but plaintiff did not attach those letters to the complaint. Even assuming the letters exist, they are insufficient to satisfy the PLRA's exhaustion requirement. *See Branch v. Brown*, 2003 WL 21730709, at *8 (S.D.N.Y. 2003) (holding that the mere sending of a letter to the official in charge of a prison facility does not suffice as a proper alternative sufficient to satisfy an inmate's exhaustion requirement); *see also Applegate v. Annucci*, 2008 WL 2725087, at *10 (N.D.N.Y. 2008) (holding that although the court was hampered in its ability to determine whether the plaintiff was excused from the exhaustion requirement due to the plaintiff's failure to respond to defendants' motion, the record lacked any evidence that the defendants prevented the plaintiff from pursuing available remedies).

   **B.**  **Waiver of Affirmative Defense of Non-Exhaustion**

With regard to the next factor, defendants raised plaintiff's failure to exhaust as an affirmative defense in their answer. *See* Answer (Dkt. No. 16), ¶6, 7. The record contains no evidence suggesting that defendants relinquished the affirmative defense. Accordingly, defendants are not estopped from asserting the exhaustion defense.

   **C.**  **Existence of Special Circumstances**

11

To determine whether "special circumstances" exist, a court must consider the "circumstances which might lead usually uncounselled prisoners to fail to grieve in the normally required way". *Hill*, 2009 WL 3698380, at *6 (citing *Giano*, 380 F.3d at 678). Findings of special circumstances have primarily been established where a plaintiff acted pursuant to a reasonable interpretation of the regulations. *Winston v. Woodward*, 2008 WL 2263191, at *10 (S.D.N.Y. 2008). Special circumstances do not exist where plaintiff fails to allege that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain. *McCloud v. Tureglio*, 2008 WL 1772305, at *14 (N.D.N.Y. 2008).

Based upon the record, this Court concludes that plaintiff has not established that "special circumstances" justified his failure to properly exhaust his administrative remedies. Plaintiff alleges that he told his public defender about the abuse but provides no facts to support his conclusory allegation. Even assuming plaintiff verbally conveyed his grievance to his counsel, this effort fails to satisfy the strict exhaustion requirement. *See Harrison v. Goord*, 2009 WL 1605770, at *8 (S.D.N.Y. 2009) (holding that although the undisputed evidence established that the plaintiff verbally conveyed his grievances to several of the defendants and sent numerous letters, these actions failed to exhaust his remedies); *see also Lunney v. Brureton*, 2007 WL 1544629, at *7 (S.D.N.Y. 2007) (verbal complaints do not excuse a failure to exhaust); *McNair v. Sgt. Jones*, 2002 WL 31082948, at * 7 (S.D.N.Y. 2002) (a complaint made to the Legal Aid Society is not permitted by the administrative grievance process and thus, does not satisfy the exhaustion requirement).

At the summary judgment stage, plaintiff "may not rest upon the mere allegations" of his

complaint, but must demonstrate, "by affidavits or as otherwise provided in [Rule 56] . . . that there is a genuine issue for trial." *Gilliam v. Goord*, 2008 WL 2704908, at *2 (W.D.N.Y. 2008) (citing Fed. R. Civ. P. 56(e)).   Therefore, after considering the above-described factors in conjunction with defendants' motion and the exhibits submitted therewith, this Court dismisses plaintiff's complaint due to his failure to exhaust his administrative remedies.  *See Dawkins v. Jones*, 2005 WL 196537, at *6-8 (S.D.N.Y. 2005); *Akam v. O'Malley*, 2004 WL 1739519, at *3-5 (N.D.N.Y. 2004); *Muhammad v. Pico*, 2003 WL 21792158, at *8-9 (S.D.N.Y. 2003).

**IV.     Excessive Force**

In the alternative, defendants argue that even if plaintiff's claims were not subject to dismissal for failure to exhaust, defendants would be entitled to summary judgment because no reasonable factfinder could conclude that plaintiff suffered from a deprivation or violation of his constitutional rights.  Plaintiff alleges that John Doe #1 used force against plaintiff without need or provocation.  Specifically, plaintiff claims that John Doe #1 slapped his face, placed restraints too tightly upon his hands and legs and repeatedly punched plaintiff while in an elevator. Defendants move for summary judgment arguing that plaintiff's excessive force claim should be dismissed because the facts, as alleged by plaintiff, did not occur.

When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  Claims that prison officials applied restraints too tightly are analyzed under the Eighth Amendment as claims of excessive force.  *See Davidson v. Flynn*, 32 F.3d 27 (2d Cir.1994).  The extent of any injury suffered by the inmate "is

13

one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 7 (citation and quotation marks omitted).

> In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

*Id*. (citation and quotation marks omitted). In other words, not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9.

An Eighth Amendment claim of cruel and unusual punishment has two components, one subjective and one objective. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). The objective component focuses on the harm done, and the defendants' conduct must be " 'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.' " *Whitely v. Albers*, 475 U.S. 312, 327 (1986). The court must ask itself whether the alleged conduct was objectively "harmful enough to establish a constitutional violation." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson*, 503 U.S. at 8) (internal quotation marks omitted). However, where the defendants use force maliciously and sadistically, the "contemporary standards of decency" are always violated, whether or not a "significant injury" occurs. *Id*. at

14

268-69 (quoting *Hudson*, 503 F.3d at 9).

The subjective component focuses on the motive for the defendants' conduct, and requires a showing that the defendant had the necessary "level of culpability," shown by actions that exhibit "wantonness" in light of the particular circumstances surrounding the challenged conduct. *Id*. (citing *inter alia Hudson*, 503 U.S.at 7-8). The determination of whether action is "wanton" turns upon whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 7; *Whitely*, 475 U.S. at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973)).  Thus, where a prisoner's claims, together with his evidentiary proffers could "reasonably, if credited, allow a rational fact finder to find that corrections officers used force maliciously and sadistically," then summary dismissal is not appropriate. *Wright,* 554 F.3d at 269 (emphasizing that the prohibition against cruel and unusual punishment does not extend to *de minimis* uses of physical force, provided that the use of force is not "repugnant to the conscience of mankind")

In this matter, defendants allege that the incidents described by plaintiff did not occur. Although defendants do not explicitly say so, their argument that "plaintiff has no objective evidence" is apparently an attempt to invoke a "narrow exception" to the general rule that credibility determinations are not to be made on summary judgment. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  Credibility determinations and choices between conflicting versions of the events are generally matters for a jury and not for the court on summary judgment. *Rule v. Brine*, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (citing *inter alia Anderson*, 477 U.S. at 255).  However, there is a very narrow exception to the rule as stated by

15

the Second Circuit in *Jeffreys v. City of New York*, 426 F.3d 549, 553-55 (2d Cir. 2005).

In *Jeffreys*, the Second Circuit held that summary judgment may be awarded in the rare circumstance where there is nothing in the record to support plaintiff's allegations, other than his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that "no reasonable person" could believe the plaintiff's testimony. *Id*. at 554-55.  In order for the *Jeffreys* exception to apply: (1) the plaintiff must rely "almost exclusively on his own testimony"; (2) the plaintiff's testimony must be contradictory or incomplete; and (3) the plaintiff's version of events must be contradicted by defense testimony.  *Jeffreys*, 426 F.3d at 554.

Upon a review of the record, this Court finds that the circumstances of this case fall within the narrow exception to the rule that the issues of credibility are not to be resolved by a court on a motion for summary judgment.  First, plaintiff has not opposed defendants' motion.  Therefore, the complaint is the only record of plaintiff's allegations and provides the sole basis for the disputed issues of fact in this case.   Thus, this factor suggests that the *Jeffreys* exception should apply.

Second, plaintiff's allegations are incomplete and the record contains contradictory evidence establishing that the alleged incidents did not occur.  In the complaint, plaintiff alleges that John Doe #1 punched him in the stomach and slammed his face against the elevator door.  Plaintiff failed to identify the officer(s) who he alleges assaulted him.  Moreover, plaintiff does not allege that he was required to seek medical treatment or that he suffered any significant injury as a result of John Doe #1's actions.  Indeed, the record lacks any medical evidence to support plaintiff's version of events.  In support of the motion, defendants provided copies of plaintiff's

16

ACCF medical file.[4]  The medical records are devoid of any treatment in October 2005.  In fact, according to the records, plaintiff did not request any medical services or treatment in October 2005, November 2005 or December 2005.

Plaintiff's version of the alleged events is also contradicted by affidavits submitted in support of the motion from Sheriff Campbell and Thomas J. Wigger (Superintendent of ACCF).  Sheriff Campbell stated that according to the Court Clerk's diary and transport logs, plaintiff never went to court in October 2005 and in fact, never left the facility in October 2005.  Moreover, Sheriff Campbell provided a description of the area where plaintiff alleges that the incidents occurred.  According to the Sheriff, "the assault would be taking place in front of a significant audience" as the subject elevator was manually operated with "floor to top" glass panels and interior lighting by a 100 watt or two 75 watt ceiling mounted bare bulbs which would have enabled "dozens and dozens of people to see and hear" the incident.  Further, Superintendent Wigger avers that he examined the transport logs and facility records and found nothing indicating that plaintiff had been assaulted during trips to and/or from court.  Based upon the record, the Court finds that there is no credible evidence that establishing that any incident(s) occurred in October 2005 giving rise to the claims herein.  *See Dove v. City of New York*, 2007 WL 805786, at *5 (E.D.N.Y. 2007) (holding that the credibility of the plaintiff's submissions was undermined by evidence presented by the defendants including hospital records and a complete lack of evidence to support plaintiff's claims).

A review of the entire record demonstrates that no reasonable person could credit

---

[4] The medical file was annexed as an exhibit to James Campbell's affidavit.  Sheriff Campbell averred that, "[t]he entire medical file is attached hereto as Exhibit 'A'.  There is not even so much as a request for an aspirin.  There is no evidence of physical abuse, not even a verbal complaint".  *See* Campbell Aff., at ¶ 12, 13.

plaintiff's conclusory and speculative allegations. Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's claim of excessive force is granted.

## IV.     Failure to Intervene

A corrections worker who, while not participating in an assault upon an inmate, is present while it occurs may nonetheless bear responsibility for any resulting constitutional deprivation. It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Mowry v. Noone*, 2004 WL 2202645, at *4 (W.D.N.Y. 2004); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted). In order to establish liability on the part of a defendant under this theory, a plaintiff must prove the use of excessive force by someone other than the individual, and that the defendant under consideration: (1) possessed actual knowledge of the use by another corrections officer of excessive force;  (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *See id.*; *see also Espada v. Schneider*, 522 F.Supp.2d 544, 555 (S.D.N.Y.2007).

In this case, plaintiff's failure to intervene claim is based on his excessive force claim. This Court has already determined that defendants are entitled to summary judgment and dismissal of plaintiff's excessive force claim. As plaintiff has failed to establish a claim of excessive force as against John Doe #1, John Doe #2 cannot be found liable for failure to intervene. *See Atkins v. County of Orange*, 372 F.Supp.2d 377, 407 (S.D.N.Y. 2005).

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that defendants' motion for summary judgment and dismissal of plaintiff's complaint as to all defendants (Dkt. No. 29) is **GRANTED**, and it is further

**ORDERED** that this matter is terminated in its entirety as to all defendants and all claims; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties by regular or electronic mail.

**IT IS SO ORDERED.**

Date:   March 18, 2010

Norman A. Mordue
Chief United States District Court Judge